## BROMWELL BRUSH & WIRE GOODS CO. v. STATE BOARD OF CHARITIES AND CORRECTIONS.

(District Court, E. D. Kentucky. September 24, 1921.)

No. 947.

1. **Dismissal and nonsuit** ⟾53(1)—**Noncompliance with statutory condition not ground for dismissal.**

Where noncompliance with a state statute is relied on to defeat an action, it should be pleaded in answer, and is not ground for a motion to dismiss.

⟾For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes.

**2. States** ⟨⟩**193—State board, with corporate powers, held "corporation," with power to sue and be sued.**

The State Board of Charities and Corrections of Kentucky, created by Act March 9, 1920 (Acts 1920, c. 7), *held* a corporation or quasi corporation, with power to sue and be sued, though not expressly so named or given such power by the statute.

**3. Courts** ⟨⟩**303(2)—Suit against state board held not "suit against the state."**

A suit against a state officer or a state agency, as a state board, in which the relief sought is solely against the officer or board, and a good cause of action is stated against him or it, is not a suit against the state within the Eleventh Amendment, but is maintainable, no matter how much the state will be affected by the granting of such relief.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Suit Against the State.]

At Law. Action by the Bromwell Brush & Wire Goods Company against the State Board of Charities and Corrections. On motions by defendant to dismiss. Denied.

Myers & Howard, of Covington, Ky., for plaintiff.
Charles I. Dawson, Atty. Gen., of Kentucky, for defendant.

COCHRAN, District Judge. [1] This cause is before me on defendant's motion to dismiss the action, because plaintiff has not complied with section 571 of Kentucky Statutes, and its special demurrer and motion to dismiss the action for want of jurisdiction. If section 571 of Kentucky Statutes is in the way of plaintiff's right to maintain this action, it should be set up by answer, and not by motion to dismiss. This motion of defendant, therefore, is dismissed.

[2] The ground upon which it is claimed that this court is without jurisdiction is that it is a suit against the state of Kentucky, and hence prohibited by the Eleventh Amendment to the Constitution of the United States. The action is one by plaintiff to recover of the defendant $92,500 damages for breach of contract made with it by defendant's predecessor, the State Board of Control. The State Board of Control owed its existence to the act of March 26, 1918. Acts Ky. 1918, p. 75. The defendant, State Board of Charities and Corrections, owes its existence to the act of March 9, 1920. Acts 1920, p. 9.

By section 2 of the latter act it is provided that the defendant is "vested with authority to and shall, except as hereinafter provided, exercise * * * the privileges and discharge all the duties now vested by law in the State Board of Control," and that the State Board of Control is "hereby abolished and the terms of office of the present members of same are hereby terminated." In neither act is it provided in so many words that the board thereby created is to be a corporation. Notwithstanding such is the case, the former board was, and the defendant board is, a corporation, or at least a quasi corporation, whatever that may mean. Direct authority for this position is to be found in the decision of the Kentucky Court of Appeals in the case of Gross v. Kentucky Board of Managers, 105 Ky. 842, 49 S. W. 458, 43 L. R. A. 703. It was there held that the Kentucky Board of Managers of the World's Columbian Exposition, created by an act of the Legisla-

ture of this state, was such an entity, though it was not expressly so provided therein. Judge Hobson said:

"So the question is presented whether appellee was invested by the Legislature with the character of a corporation or quasi corporation. It is not necessary that the thing created by the Legislature should be named by it a corporation. Its character depends upon the powers given it, and not upon the name by which the Legislature may call it."

In support of the decision, that of the Supreme Court of the United States in the case of Hancock v. Louisville & Nashville R. R. Co., 145 U. S. 415, 12 Sup. Ct. 969, 36 L. Ed. 755, was cited. In the opinion therein it is said:

"That this entity was not in terms named a corporation is not decisive. It is enough that an artificial entity was created, with power to exercise the functions of a corporation. It was, though not named, a corporate entity."

Such being the case, the State Board of Control, as long as it was in existence, had, and the defendant board, since its creation, has, the power to sue and to be sued. Such is an inseparable incident of being a corporate entity. It is of no consequence that in neither act is there a provision expressly conferring such power. There was no such power conferred on the Kentucky Board of Managers of the World's Columbian Exposition in the act creating it. Yet in the Gross Case it was held that it was suable. In Clark & Marshall on Corporations, vol. 1, p. 664, it is said:

"In the absence of charter or statutory provisions to the contrary, a corporation has the same capacity as a natural person to sue and be sued, either at common law, or in equity, or in admiralty."

And again:

"Among the incidental or implied powers which have been attributed to corporations from the earliest period is the power to sue and be sued. This power need never be expressly conferred. Whenever a corporation is duly created, among the incidents, 'tacite annexed,' is the capacity 'to sue and be sued, implead and be impleaded.' Corporations, therefore, unless there is some restriction in their charter, 'may maintain all such actions as are necessary to assert their rights when invaded, or to give them a recompense for any injury that can be done to them; and e converso, they may be sued like a natural person, to enforce any obligation to which they may be subject, or to obtain redress for any wrong for which they are liable."

This brings me to the question raised by the motion under consideration; i. e., whether this is a suit against the state of Kentucky. It is claimed that it is, because it is a suit against a state agency, and, if it is successful, property will be subjected to the judgment recovered which the defendant acquired from the state, and which it holds for the benefit of the state. But it does not follow from this that it is a suit against the state within the meaning of the Eleventh Amendment. It seems to me that on principle the true test for determining whether a particular suit is against a state is whether the state is a party defendant; i. e., whether it is in fact sued. That was the test prescribed by Chief Justice Marshall in the case of Osborn v. Bank of United States, 9 Wheat. 738, 6 L. Ed. 204. He there said:

"It may, we think, be laid down as a rule which admits of no exception that, in all cases where jurisdiction depends on the party, it is the party

named in the record. Consequently the Eleventh Amendment, which restrains the jurisdiction granted by the Constitution over suits against states, is, of necessity, limited to those suits in which a state is a party on the record."

The Supreme Court of the United States, however, is now irrevocably committed to the position that such is not the true test for determining the applicability of that amendment to a particular suit. It first broke away from this test in the case of Poindexter v. Greenhow, 114 U. S. 270, 5 Sup. Ct. 903, 962, 29 L. Ed. 185. It there, through Mr. Justice Matthews, said:

"The question whether a suit was within the prohibition of the Eleventh Amendment is not always determined by reference to the nominal parties on the record. The provision is to be substantially applied in furtherance of its intention, and not to be evaded by technical and trivial subtleties."

The matter was put stronger, through the same justice, in the case of In re Ayers, 123 U. S. 443, 8 Sup. Ct. 164, 31 L. Ed. 216:

"It must be regarded as the settled doctrine of this court, established by its recent decisions that the question whether a suit was within the prohibition of the Eleventh Amendment is not always determined by reference to the nominal parties on the record."

And further:

"This, it is true, is not in harmony with what was said by Chief Justice Marshall in Osborne v. Bank of the United States."

In view of the fact that it was through Mr. Justice Matthews that the Supreme Court thus expressed itself, perhaps it is not untrue to say that it was under his leadership that it first took position antagonistic to that so confidently and absolutely expressed by Chief Justice Marshall. Since then it cannot be said that the Supreme Court has laid down any simple test for determining whether the amendment is applicable in a given case. In this regard the matter may be said to be somewhat at sea. There is one thing certain about it, however, and that is that the test is not whether the state is affected by the particular suit.

Numerous illustrations of this can be obtained from the decisions of the Supreme Court. But one is sufficient to make the statement good. It is a suit against an officer of the state to compel him to perform a ministerial duty prescribed by statute. It was held that such a suit is maintainable. In the case of United States v. Boutwell, 17 Wall. 604, 21 L. Ed. 721, the Secretary of the United States Treasury was compelled by suit to issue bonds of the United States, thus fixing liability upon it. And in the case of Rolston v. Crittenden, 120 U. S. 399, 7 Sup. Ct. 599, 30 L. Ed. 721, the Governor of Missouri was so compelled to assign certain liens held by the state, thus depriving the state thereof. In the latter case it was said:

"Here the suit is to get a state officer to do what a statute requires of him. The litigation is with the officer, not the state. The law makes it his duty to assign the liens in question to the trustees when they make a certain payment. The trustees claim that they have made this payment. The officer says they have not, and there is no controversy about his duty if they have. The only inquiry is therefore, as to the fact of a payment according to the requirements of the law."

[3] This line of decisions justifies the position that a suit against a state officer or a state agency, in which relief is sought solely against the officer or agency, and a good cause of action against him or it is stated, is always maintainable, no matter how much the state will be affected by the granting of such relief. Such a suit is not a suit against the state. It should make no difference, as to its being a suit against the state, if a good cause of action against the state officer or agency is not stated. It should be sufficient to prevent its being such that the relief which is sought is solely against such officer or agent. It is true that the suit would not be maintainable. But this would be because a good cause of action is not stated, and not because the suit is one against the state. If I am right in this, then this is not a suit against the state. It is a suit against the defendant only. The relief which is sought is a personal judgment against the defendant for $92,-500 damages for breach of contract. The question as to whether it is a suit against the state is unaffected by the question whether the petition states a good cause of action against defendant. For criticism—I use this word in its good sense—of the decisions of the Supreme Court of the United States involving the question we have here, see my opinion in Louisville & Nashville R. R. v. Bosworth (D. C.) 209 Fed. 380, 385.

The conclusion which I have reached is supported by the decisions of the Kentucky Court of Appeals. The defendant cites in support of its position the following cases, to wit: Williamson v. Louisville Industrial School of Reform, 95 Ky. 251, 24 S. W. 1065, 23 L. R. A. 200, 44 Am. St. Rep. 243; Leavell v. Western Kentucky Asylum for Insane, 122 Ky. 213, 91 S. W. 671, 4 L. R. A. (N. S.) 269, 12 Ann. Cas. 827; Ketterer's Adm'r v. State Board of Control for Charitable Institutions, 131 Ky. 287, 115 S. W. 200, 20 L. R. A. (N. S.) 274; Zoeller v. State Board of Agriculture, 163 Ky. 446, 173 S. W. 1143. They do not support it. Their presupposition is against it. In each case it was held that a state agency, such as the defendant, is not liable for the tortious act of its officers or servants. The question in those cases was not as to the suability of the defendant, but as to its liability. The same principle was applied in them as governs such suits against a charitable institution. Cook, Adm'r, etc., v. John M. Norton Memorial Infirmary, 180 Ky. 331, 202 S. W. 874, L. R. A. 1918E, 647. Those cases presuppose that the state agency was suable. The question as to the applicability of the Eleventh Amendment or the doctrine as to the suability of a state was not raised in either one of them.

There is another line of cases in which it is held that such a state agent is liable for certain exceptional tortious acts of its officers and servants. They are represented by the cases of Herr v. Central Kentucky Lunatic Asylum, 97 Ky. 458, 30 S. W. 971, 28 L. R. A. 394, 53 Am. St. Rep. 414; Hauns v. Ky. Lunatic Asylum, 103 Ky. 562, 45 S. W. 890. These decisions are against defendant's contention, and directly against it are the decisions in the cases of Gross v. Kentucky Board of Managers, supra; Reliance Mfg. Co. v. Board of Prison Commissioners, 161 Ky. 145, 170 S. W. 941. It must be held, therefore, that defendant's motion to dismiss for want of jurisdiction is not well taken.

The question as to whether the defendant's predecessor, the State Board of Control, had power to make the contract sued on, and as to whether the defendant was under obligation to carry out that contract, and could breach it, and can be sued for its breach, are not before me.

An order will be entered overruling both motions.