THE STATE EX REL. STATE HIGHWAY COMMISSION v. S. W. BATES, Judge of Circuit Court of Jasper County.—296 S. W. 418.

Court en Banc, June 27, 1927.

1. **STATE HIGHWAY COMMISSION: Can Be Sued: Consent of State.** The State Highway Commission is not the sovereign State, but a legal entity, created by the State, by direct legislative action, with the powers and obligations of a corporation and subject to the rules of law governing private corporations, and in no sense is entitled to immunity from suit, as is the State. But even if it were in fact a mere state agency in the strict sense of that term, the law of its creation carries with it the express consent of the State that it may sue and be sued as such, and that is sufficient to authorize the maintenance of a suit against it.

2. ————: **Private Corporation: Service of Process.** The State Highway Commission is not a private corporation, but a legal entity created for public purposes and possessing many of the attributes of a corporation, and as such and by its name may sue and be sued; but such legal entities are a class to themselves, and the county in which they may be sued and how service of process upon them may be obtained, depend upon the statute.

3. ————: **Place of Service and Suit.** The statute makes Cole County the residence of the State Highway Commission and of its secretary, and while suit may be brought against the Commission the suit can be brought only in Cole County. Service of process must be had upon its secretary, who is also by statute made a resident of the state capital, and there is no provision for venue in any other county.

4. ————: **Corporation: Created by Special Law: Legal Entity: Separate Class: Venue: Process.** In view of the Constitution (Sec. 2, Art. 12) the Legislature cannot by special law create a private corporation or a quasi-public corporation. But the State Highway Commission is not a "corporation" in the sense that word is used in Sections 1180 and 1192, Revised Statutes 1919, relating to the county in which suits may be brought against corporations and the manner in which service of process upon them may be had, but is a legal entity created by the State for designated public purposes, and such legal entities constitute a separate class unto themselves, and the statute creating such a legal entity may prescribe the venue of the suit and the manner of service of legal process, it matters not in what county the cause of action originated; and the Act of 1921 (Laws 1921, Ex. Sess., pp. 132 to 167) has made the Commission and its secretary residents of Cole County, and all suits against it must be brought in such county, and all legal process must be served upon its secretary in such county.

---

Corpus Juris-Cyc. References: **Corporations,** 14 C. J., Section 45, p. 75, n. 39. **Highways,** 29 C. J., Section 268, p. 553, n. 59; Section 278, p. 562, n. 25; Section 286, p. 567, n. 73. **States,** 36 Cyc., p. 869, n. 51; v. 911, n. 45; p. 913, n. 55, 56; p. 919, n. 8, 9.

Prohibition.

RULE MADE ABSOLUTE.

*North T. Gentry*, Attorney-General, and *Luc C. Lozier*, *Edgar Shook* and *Hugh Dabbs* for relator.

(1) It is fundamental that the State, being sovereign, cannot be sued without its consent. 36 Cyc. 911; Merchants Exchange v. Knott, 212 Mo. 616, 647; Hampton v. State Board of Education, 105 So. 323, 42 A. L. R. 1456; Looney v. Stryker, 249 Pac. 112. (2) No express constitutional or statutory provision is necessary to maintain this immunity. Rather, suit against the State is allowed only under express statutory enactments. People v. Greylock Construction Co., 209 N. Y. Supp. 735; Smith v. State, 118 N. Y. Supp. 780. (3) Statutes authorizing suits against the State, being in derogation of sovereignty, must be strictly construed. 36 Cyc. 913, 1177; Miller v. Pillsbury, 164 Cal. 199, 128 Pac. 327; Westinghouse Elec. Co. v. Chambers, 169 Cal. 131, 145 .Pac. 1025; Mason v. Cooper, 19 Ga. 543; Village v. State, 181 N. Y. Supp. 189; Looney v. Stryker, 249 Pac. 112. (4) The suit against relator is one against the State, which is the real party in interest. Laws 1921, 1st Ex. Sess., pp. 126-167; 36 Cyc. 919; Shelby v. Blind Comm., 309 Mo. 612; State ex rel. Thompson v. Board of Regents, 305 Mo. 57; Hampton v. State Board of Education, 105 So. 323, 42 A. L. R. 1456; Looney v. Stryker, 249 Pac. 112; Sherman v. Gage, 279 S. W. 508; Anderson v. Hayes Const. Co., 213 N. Y. Supp. 513; State to use of Walker v. State Roads Comm. (Md.), 95 Atl. 956; Carpenter v. Railway Co., 184 N. C. 400, 114 S. E. 693. (5) Relator is not a private corporation, subject to the provisions of Sec. 1180, R. S. 1919, authorizing suits against a corporation, as a single defendant, in any county in which it has or usually keeps a place of business. Laws 1921, 1st Ex. Sess., pp. 131-167; 14 C. J. 72, 73; Heller v. Stremmel, 52 Mo. 309; Morrison v. Morey, 146 Mo. 561; Harris v. Bond Co., 244 Mo. 689; Land & Stock Co. v. Miller, 170 Mo. 240; Fire Alarm Co. v. Board, 285 Mo. 581, 227 S. W. 114; Head v. University, 47 Mo. 220; State ex rel. Thompson v. Board of Regents, 305 Mo. 57; Cloud v. Pierce City, 86 Mo. 357; Kansas City v. Vinyard, 128 Mo. 75; Carr v. School District, 42 Mo. App. 154; Carpenter v. State Highway Comm., 184 N. C. 400, 114 S. E. 693; King v. Board of Pharmacy, 157 Ky. 52, 162 S. W. 561; People v. Dunn, 255 Ill. 287; Looney v. Stryker, 249 Pac. 112. (6) The official and sole legal residence of relator is at the state capital in Jefferson City. Laws 1921, 1st Ex. Sess., pp. 131-167; State ex rel. Gardner v. Hall, 282 Mo. 425, 221 S. W. 708; Weller v. Mueller, 120 Md. 633, 87 Atl. 1045; King v. Board of Pharmacy, 157 Ky. 52, 162 S. W. 561; State ex rel. v. Flannelly, 96 Kan. 372, 152 Pac. 22. (7) Furthermore, the secretary of relator was served in Cole County, not in Jasper County.

The Circuit Court of Jasper County, therefore, acquired no jurisdiction. Cases cited in preceding paragraph. (8) Where the General Assembly has intended that a governmental agency might be sued it has expressly so declared. Where suit is authorized: State Highway Commission, Laws 1921, 1st Ex. Sess., pp. 131-167; Public Service Commission, Sec. 10420, R. S. 1919; State Horticultural Society, Sec. 11953, R. S. 1919; State Board of Agriculture, Sec. 11933, R. S. 1919; State Poultry Board, Sec. 12027, R. S. 1919; State Dental Board, Sec. 12627, R. S. 1919; State Prison Board, Sec. 12407, R. S. 1919; State University, Sec. 11523, R. S. 1919; State Teachers Colleges, Sec. 11491, R. S. 1919; Workmen's Compensation Commission, Sec. 13650, R. S. 1919; Blind Commission, Laws 1925, p. 316; Board of Health, Sec. 7336, R. S. 1919. Where suit is not authorized: Board of Pharmacy, Sec. 4718, R. S. 1919; Board of Nurses, Laws 1923, p. 287; Board of Osteopathy, Laws 1921, p. 532; Board of Permanent Seat of Government, Laws 1923, p. 302; Board of Education, Sec. 11398, R. S. 1919; State Highway Board (Predecessor of Relator), Art. XI, Chap. 98, R. S. 1919.

*A. G. Young* for respondent.

(1) A suit against the State Highway Commission is not a suit against the State and may be maintained without the consent of the State. 24 Ency. P. & P. 65, 67; 14 C. J. 75, sec. 45; 29 C. J. 567, sec. 286; 36 Cyc. 919; Gross v. World's Columbian Exposition, 105 Ky. 840, 49 S. W. 458; Stern v. State Dental Examiner, 50 Wash. 100, 96 Pac. 693; Reagan v. Farmer's L. & T. Co., 154 U. S. 362, 388; Rolston v. Mo. Fund Comm., 120 U. S. 390; Railroad Commissioners v. Pensacola & A. Railroad Co., 24, Fla. 417, 466; City of Chicago v. Chicago, 207 Ill. 37, 69 N. E. 919; Butterfield v. State Ind. Acc. Comm., 11 Ore. 149, 223 Pac. 941, 226 Pac. 216; Bromwell Brush & Wire Goods Co. v. State Board, 279 Fed. 440; Sinking Fund Commissioners v. Northern Bank, 1 Met. (Ky.) 174; R. G. Packard Co. v. Pal. Interstate Park, 240 Fed. 543; Granville Co. Board of Education v. State Bd. of Ed., 106 N. C. 81, 10 S. E. 1002; Watkins Boating Co. v. State, 175 N. Y. Supp. 310; Ward v. State Agriculture, 70 C. C. A. 512, 138 Fed. 372; Interstate Const. Co. v. University of Idaho, 199 Fed. 509; Dunn v. University of Oregon, 9 Ore. 357; U'Ren v. State Bd. of Control, 31 Cal. App. 6, 159 Pac. 615; State ex rel. Thompson v. Board of Regents, 305 Mo. 57, 264 S. W. 698. (2) In order to constitute the State Highway Commission a corporation, it was not necessary to call it by that name. The powers conferred upon it determine its corporate character. Hancock v. Railroad Co., 12 U. S. 969; Gross v. Kentucky Bd. of Man., 49 S. W. 458. (3) The State Highway Commis-

sion being a corporate entity, capable of suing and liable to be sued even without legislative consent, it may be served with summons at any business office in the State, as is provided in Sections 1180 and 1192, Revised Statutes 1919. 29 C. J. 567, sec. 286. Also cases supra. (4) The Legislature in creating the State Highway Commission expressly provided that it may sue and be sued. Sec. 12, Act of 1921. It may then be sued as any other corporation for two reasons: (a) It is a corporate entity and may be sued without its consent, and (b) Consent is expressly given. (5) This being a transitory action suit may be brought wherever jurisdiction may be obtained, regardless of where the contract was made or where it was performed. 15 C. J. 738. (6) When a state submits itself to the jurisdiction of the courts, the law should be so interpreted as to give it the fullest effect. 36 Cyc. 914; 14 Ency. P. & P. 68; Rodgers v. National Council, 172 Mo. App. 725.

GRAVES, J.—Original action in prohibition. The facts are undisputed, because the pleadings *nisi* were so framed as to make questions of law only. It appears that J. Frank Todd and Ben C. Aylor, partners, doing business under the name of Highway Construction Company, sued the relator herein (State Highway Commissioner of Missouri) in Jasper County, Missouri, for damages on a contract. The damages claimed were $26,000. The contract out of which it is claimed that these damages arose, was one entered into by relator, and the plaintiffs in the action brought in Jasper County, for the construction of a certain state highway in Howard County, Missouri.

In the Jasper County suit the plaintiffs sued out two writs of summons, one to Jasper County, and one to Cole County. Both were served. The one to Jasper County was served: "By delivering a duly certified copy of said original writ and certified copy of the petition to one Dean Wilson, assistant division engineer of relator, at one of the offices of relator, said office being one usually had and maintained by relator in the transaction of its usual, ordinary and customary business in said county, and the said Dean Wilson at that time being in charge of said office; that return of the alleged service upon relator as aforesaid was made by the sheriff to the Clerk of the Circuit Court of Jasper County, at Joplin."

The writ directed to Cole County was served: "By delivering a true copy of the same, with a petition thereto attached, as certified to by A. E. Taggart, Circuit Clerk of Jasper County, Missouri, to E. J. McGrew, secretary of relator; that return of said service upon relator, as aforesaid, was made by the Sheriff of Cole County to the Clerk of Circuit Court of Jasper County, at Joplin."

The relator here (defendant *nisi*) filed, in the lower court, both a special and limited motion to quash the service, and a special and

limited motion or plea to the jurisdiction. We mean by special, that defendant entered its appearance only for such motions, and not generally.

The trial court (respondent herein) sustained the motion to quash the service, so far as the service in Jasper County was concerned, but overruled the motion as to the service in Cole County. The motion or plea to the jurisdiction was overruled. Such are the facts, and we have left but a few knotty propositions of law.

I. It is first contended by the relator, that: "It is fundamental that the State, being sovereign, cannot be sued without its consent." If such is the status of this case, i. e., that the State is being sued, without its consent, then, as LAMM, J., said in Merchants Exchange

**Right of Suit.**

v. Knott, 212 Mo. 1. c. 647, "that the sovereign State may not be sued is a truism." It should be added that the sovereign may, by law, give consent to the citizen to sue it. But this ruling does not dispose of the point, because there are two questions left open. They are, (1) is the State the real party, and (2) if so, has the State not given consent to be sued?

Relator was sued in Jasper County (according to the terms of the petition, attached to relator's petition for our writ in the instant case) "as a corporation created by the laws of the State of Missouri, with authority to sue and liable to be sued in its official name," and we do not understand the learned Attorney-General to gainsay that relator is not a legal entity of the State, created by the laws of the State, and having powers similar to a corporation. Counsel may differ as to the exact character of this legal entity, but they do not differ as to the relator being a legal entity possessed of the powers of a corporation. Relator, among other things, contends that it is not a private corporation, so as to make it amenable (so far as the method of getting service upon it is concerned) to the statutes providing for service upon private corporations. The Act of 1921 (Laws 1921 1st Ex. Sess., p. 131 et. seq.), which created the "State Highway Commission of Missouri," leaves no doubt of the fact that such body is a legal entity with powers of a corporation. The name, quoted supra, is taken from Section 12 of the Act of 1921, Laws 1921, First Ex. Sess., page 136. This name is required to be the inscription upon the seal to be used by the Commissioner. In our judgment it is a legal entity created by the State, by direct legislative action, for the purpose of building and maintaining state highways out of funds provided for such purpose, which funds are set aside for the specific purpose and can be used for no other purpose.

It is an entity with powers of a corporation established and controlled by the State for a specific public purpose, but that does not make this legal entity the sovereign State. No contract it is author-

ized to make is made in the name of this State, but in the name of the Commission. The sovereign State could have contracted for the building of its public highways in its own name, but it chose to create a legal entity for this work. This act gave to this legal entity no part of the State's sovereignty, but authorized it to proceed to do certain work which the State could have had done by private contracts made direct with the State. Thus it has been well said in 14 Corpus Juris, at page 75:

"Although a corporation may be public, and not private, because established and controlled by the State for public purposes, it does not necessarily follow that such a corporation is in effect the State, and so not subject to the rules of law governing other corporations, for the State may, by engaging in a particular business through the instrumentality of a corporation, divest itself *pro hac vice* of its sovereign character, so as to render the corporation subject to the rules of law governing private corporations. Thus, although incorporated banks established by the State for its own public purposes and owned and controlled entirely by the State are undoubtedly public corporations, it has been held that they are not for that reason invested with the attributes of sovereignty, but are mere corporations and subject generally to the · rules of law governing other corporations."

Such is the status of this Commission. It is not the State, but a mere entity created by the State for the specific purpose of contracting for the building of state highways and bridges and the maintenance of the same and doing all other things pertaining thereto. In the language of WALKER, J., in State v. Board of Regents, 305 Mo. l. c. 68, "it was constituted a legal entity, without in any wise lessening the sovereignty of the State." It is in no sense entitled to immunity from suit, as is the State. In fact the State, which created the Commission, subjected it to be sued by express statutory provisions. If on the other hand, it is in fact and in law the State, or the State's *alter ego*, the State has consented to suit being brought. The Commission is not the State, with the State's sovereignty (or any part thereof), but is a mere creature of the State, created for the express purpose of performing a specific work.

A case fully in point is the case of Gross v. Kentucky Board of Managers World's Columbian Exposition, 105 Ky. 840. At page 843 of the majority opinion it is said:

"The rule is well settled that the State cannot be sued, and that the same protection is extended to the officers of the State. But this rule does not apply to a corporation created by the State for certain public purposes. If appellee was made by the acts referred to a corporation or a quasi-corporation, we see no reason why it should be exempted from the rule allowing suits to be brought against corpora-

tions on contracts they have made. So the question is presented whether appellee was invested by the Legislature with the character of a corporation or quasi-corporation. It is not necessary that the thing created by the Legislature should be named by it a corporation. Its character depends upon the powers given it, and not upon the name by which the Legislature may call it.

"Following a decision of this court, the Supreme Court of the United States, in Hancock v. Louisville & Nashville Railroad Co., 145 U. S. 415, 12 Sup. Ct. 969, said: 'By the Act of 1869 this prescribed portion of Shelby County was authorized to issue bonds and subscribe stock. The bonds, when issued, were not the obligations of Shelby County, nor of the individual taxpayers, and still there must be some debtor. That debtor was this portion of Shelby County. Giving to it power to issue bonds and create indebtedness is the creation of an entity with power to act, and, if this entity has power to create a debt, it becomes subject to suit. That this entity was not in terms named a corporation is not decisive. It is enough that an artificial entity was created, with power to exercise the functions of a corporation. It was, though not named, a corporation entity.' . . .

"The board was authorized to have a house built, and a restaurant run in it, to employ agents and assistants, and to take necessary steps to have the State properly represented at that exposition. The commissioners clearly were not personally responsible for their obligations; the State expressly declared that it was not to be responsible, and the only reasonable conclusion is that the board of managers, to whom the $100,000 was committed to carry out the object of the act, was intended to be, to the extent of the funds put in its hands, at least a quasi-corporation; and, as the power to make contracts is expressly conferred, the power to sue or be sued on these contracts was necessarily vested in the board, for the contracts were the obligations of the board, and not the obligations of the State."

Our case, as to the State Highway Commission being a legal entity in the nature of a corporation, is stronger, in that the law of its creation provides that the Commission can sue and be sued. This brings our case even within the ruling of the two dissenting judges in the Gross case, supra. [See 105 Ky. l. c. 850.]

Thus, too, in the State of Washington, we have a somewhat similar case. By law the State Dental Board of that State was empowered to employ a private attorney, with the consent of the prosecuting attorney, to prosecute violations of the dental law. The power to contract was given, and funds were in the hands of the Dental Board with which to pay. [Stern v. State Dental Board of Examiners, 50 Wash. 100.] Stern had been employed and sued the Dental Board and got judgment. To enforce that judgment steps were taken to reach funds in the hands of the Dental Board through the medium

of a receiver. The Dental Board claimed the judgment void because against the State, or the Dental Board, an agency of the State, which like the State was exempt from suit. The court (50 Wash. 1. c. 102) said: "The original action was in no sense a suit against the State. The State is not bound by the judgment, nor are any of the State's funds charged with its payment. The claim that the Dental Board is exempt from suits by individuals is likewise untenable. Boards, commissions and bodies created by legislative authority have an incidental capacity to sue and be sued, independently of any express power, and for that purpose are to be regarded as corporations *sub modo*. [Clarissey v. Metropolitan Fire Department, 1 Sweeney (N. Y.) 224.]" There was no express legislative act giving the Dental Board the power to sue or to be sued, but the power to contract was given, from which follows the liability to be sued. In our case the attributes of a corporation are more numerous, and with these the express power to sue and be sued. So even if we should consider the Commission a mere agent of the State, we have the express provision from the State to sue such agency. In Interstate Construction Co. v. Regents of the University of Idaho, 199 Fed. 1. c. 512, it is said: "The holding of the Supreme Court seems to be that the defendant, a body corporate, may sue and be sued as any other corporation organized under the laws of the State. In that view, the sovereign has consented that, in so far as it is represented by the Regents of the University of Idaho, it may be sued in this court. [Beers v. Arkansas, 20 How. 527, 529, 15 L. Ed. 991; Clark v. Barnard, 108 U. S. 436, 437, 2 Sup. Ct. 878, 27 L. Ed. 780; Railway Co. v. Whitton, 13 Wall. 270, 286, 20 L. Ed. 571; Reagan v. Farmers' Loan & Trust Co., 154 U. S. 362, 391, 14 Sup. Ct. 1047, 38 L. Ed. 1014; Smyth v. Ames, 169 U. S. 466, 516, 18 Sup. Ct. 418, 42 L. Ed. 819; Smith v. Reeves, 178 U. S. 436, 440, 20 Sup. Ct. 919, 44 L. Ed. 1140.] Accepting as correct the construction placed upon the Constitution and statutes by the Supreme Court of the State, it is not apparent how we can, with propriety, decline to take jurisdiction of the plaintiff's claim."

Many cases are to the effect, that the State is not the real party, where it has created a legal entity to do the things to be done. [U'Ren v. State Board of Control, 31 Cal. App. 1. c. 12; R. G. Packard Co. v. Commissioners of the Palisades Interstate Park, 240 Fed. 543-544; Bromwell Brush & Wire Co. v. State Board of Charities and Corrections, 279 Fed. 440. et seq: Watkins Boating Co. v. State, 175 N. Y. Supp. 310; County Board of Education v. State Board of Education, 106 N. C. 81.]

In the last case, supra (106 N. C. 1. c. 83), the North Carolina Court said: "The defendant moves to dismiss the action on the ground that the defendant is only an agency of the State, and the

court has no jurisdiction to entertain the action, as the State does not consent to be sued. The Code, Section 2503, incorporates the defendant, and directs, among other things, that it 'may sue and be sued as such.' This is sufficient consent, if such be necessary. In Bain v. State, 86 N. C. 49, the court expressly holds that the Insane Asylum can be sued. Actions against that institution, and against the other great state agency and charity, the Institution for the Deaf and Dumb and the Blind, have been entertained by the courts. [Ellis v. North Carolina Institution for the Deaf and Dumb and the Blind, 68 N. C. 423, and other cases.]''

Many other cases could be cited, but a full discussion of the subject will be found in the foregoing. Under the authorities, the State is not a party to the present action, but even if the Commission were, in fact, a mere state agency in the pure and strict sense of that term, the law of its creation carries with it the State's consent to be sued. However, this relator (State Highway Commission) is in fact an entity in the nature of a corporation, with the powers and obligations of a corporation. As the cases say, a legal entity does not have to be called a corporation to make it a corporation. It suffices if it exercises the functions of a corporation. It is a legal entity created by the State, with all the powers and obligations of a corporation, for the purpose of carrying out a public enterprise. So, we repeat that this relator is not entitled to the immunity granted the sovereign State. It can sue, and it *can be* sued.

II. Relator next contends that it is not a private corporation, within the meaning of our laws, and hence not subject to the statutes with reference to service of process upon private corporations. That **Corporation.** relator is not a private corporation we think there is no doubt. Relator is a legal entity possessing many of the attributes of a corporation, but is not necessarily a private, business corporation. The cases sometimes call such entity a quasi-corporation, and in speaking of such an entity having the powers and the obligations of a corporation, it is in the sense that, having been given the power to contract and transact business, it must assume the obligations of their contracts and business relations. Thus in Am. Fire Alarm Co. v. Board of Police Commissioners of Kansas City, 285 Mo. l. c. 602, GOODE, J., said:

''In a New York case where officers and collective bodies not strictly corporations, but invested with some corporate powers, were conceded the right to sue in respect of matters committed to their charge, it was held the suit must be in the name of the officers and not in the name of the office, with the addition of the title of the office to show the capacity in which the defendant was sued. [Galway v. Stimson, 4 Hill (N. Y.) 136.] In that case the officer was not named as plain-

tiff and the court said it had met with no precedent for such an action. There was a statute which prescribed the procedure, but the opinion appears to have treated the rule as one existing independently of the statute. Be that as it may, our conclusion is that, though the Board of Police in the matter of contracting for certain purposes, acts as an aggregate body and to that extent quasi, or as if it were a corporation, yet not having been endowed with a name of other corporate attributes, actions against the board should be instituted in the names of the members and in their official character.

"The names of the Police Commissioners are mentioned in the petition both in the title and in the body, but not by way of making them parties, and said mention cannot be accepted as sufficient to make them parties and authorize them to be served with process, as they must be if parties. The board is treated as an entity and as a single defendant, and therefore service of process on the three members was not necessary, but only on the chief officer. [Cloud v. Inhabitants of Pierce City, 86 Mo. 357.]"

In our case the commissioners are given a name in which to sue and be sued, and a special person named to be served with the process.

If such an entity fails to respond to its obligations, then it is subject to suit, as corporations are subject to suit, and in the name given to it. None of the cases which we have read go to the question as how to serve such a legal entity when suit is brought. So far as we have read this is an open question, and one dependent upon the status of the law in the several states. These legal entities, created for public purpose, seem to be in a class to themselves, and the State could have said, when the relator was made, by statute, subject to suit, just how service of process should be had upon it. Relator claims that the State did not only do this very thing, but that the State gave it an official residence, or domicile, at the seat of the state government in Cole County, and that it must be sued in Cole County, and not elsewhere. This requires an examination of the law of its creation, as well as other statutes, and of these in the paragraphs to follow.

III. When we said, supra, that relator was not a private business corporation, we had in mind the fact that by Section 2 of Article 12 of the Constitution, the Legislature could create no such corporation
**Venue.** by special law, as relator was created. Nor could it by special law create a quasi-public corporation. We use the term "quasi-public corporation" in the sense of a corporation for private gain, but one rendering, at least in part, public service, as railroads, gas and other light corporations, and such like. We are therefore of the opinion that the word "corporations," as used in Sections 1180 and 1192, Revised Statutes 1919,—our Code of Civil Procedure—has no reference to the legal entity involved in this case.

Here the law, creating the Commission, named no chief officer or head. There are just four commissioners.. The law, after providing for suit against the entity, i. e. the Commission, says that the service of suit shall be upon the secretary. The law directs the Commission to keep its office at the state capital. The law directs the Commission to select a secretary, but this secretary must reside at Jefferson City, Missouri, and should he leave temporarily he is directed to name some one to serve in his stead, during his absence. We say must reside at the state capital, because he has charge of the office at such place. Thus there is always a secretary upon whom service can be had, and this secretary a resident of Cole County. Note further, there is no provision requiring him to be served in the office of relator, which is also the secretary's office. The language is: "Service may be had on the secretary." We might add, "a resident of Cole County," because such he must be under the law.

It is clear from the Act of 1921, that the State desired this entity to be sued, and the differences between it, and the citizens of the State, adjusted by the courts, but it is likewise clear that the domicile of the Commission is in Jefferson City, Cole County, Missouri. Throughout the act, the sundry provisions disclose a clear intent to make it plain, that while this entity was building a road system for the State the habitat of the Commission is and should be in Jefferson City, the seat of the State Government. And further, that while the State desired that the Commission should be sued, it was to be sued in Cole County, where all the maps, books, papers, contracts and such like are kept. Cole County is made the domicile of the Commission, and the secretary, upon whom service is to be had, must be a resident of such county, because he is to have charge of the Commission's office in Cole County. The Commissioners do not have to remain in Cole County. And it is singular to note that while Section 13 of the act provides for the Commission to elect a chairman and a vice-chairman yet the act provides for all legal services to be had upon the secretary.

As said, supra, this entity is in a class different from pure corporations. It was created for a purely public purpose, and in providing for suit against it, the State could provide for the place of suit, and the manner of service. This we think was done by the act. The permanent domicile of the Commission is in Jefferson City. All its books and papers are there, and there was no desire that they should be scattered around all over the State, if suits were brought in the sundry courts of the State. The State has done much toward fixing the official residence of this entity in Cole County. The act is full of provisions so indicating. We think the suit involved in this proceeding had its venue in Cole County, and not elsewhere. [State ex

rel. Gardner v. Hall, 282 Mo. 425.] If so, there is no venue in Jasper County upon any service had, or which could have been had.

Our temporary rule in prohibition should be made absolute. It is so ordered. All concur.